**UNITED STATES of America,**
**Appellee,**

v.

**Justin A. VOLPE, Defendant–**
**Appellant.**

**No. 00–1014.**

United States Court of Appeals,
Second Circuit.

Argued July 13, 2000

Decided: Aug. 16, 2000

---

Alan J. Chaset, Alexandria, VA (Marvyn M. Kornberg, New York, NY, on the brief) for Defendant–Appellant

Alan Vinegrad, Assistant United States Attorney (Loretta E. Lynch, United States Attorney, Emily Berger, Assistant United States Attorney, on the brief), Eastern District of New York, Brooklyn, N.Y. for Appellee

Before: WALKER, POOLER, and SOTOMAYOR, Circuit Judges.

WALKER, Circuit Judge:

Defendant-appellant Justin A. Volpe, a former New York City police officer, appeals from the December 30, 1999 judgment of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *District Judge*), convicting him, upon his plea of guilty, of conspiracy to deprive a person of his civil rights, in violation of 18 U.S.C. § 241, deprivation of civil rights, in violation of 18 U.S.C. § 242, and witness tampering, in violation of 18 U.S.C. § 1512, and sentencing him to 30 years' imprisonment, five years' supervised release, a $525 special assessment, and restitution of approximately $281,000. Volpe's criminal conduct, which has attracted widespread publicity, consisted primarily of a vicious sexual assault on Abner Louima, a black man who was in police custody at the time.

On appeal, Volpe challenges the district court's calculation of his sentence under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") on various grounds. He argues specifically that the district court erred in: (1) failing to grant a downward adjustment for acceptance of responsibility; (2) enhancing Volpe's range both because Louima was in police custody and because Volpe was a police officer acting under color of law; (3) enhancing Volpe's range for use of force; and (4) failing to recognize its authority to depart under U.S.S.G. § 5K2.0 for either exonerating an innocent man or for a combination of factors. We reject each of these contentions, dismiss Volpe's appeal as it pertains to the district court's failure to depart downward, and affirm the district court's judgment of conviction and sentence in all other respects.

## BACKGROUND

The following facts are taken largely from Judge Nickerson's detailed opinion containing his factual findings and legal conclusions concerning Volpe's sentence. *See United States v. Volpe*, 78 F.Supp.2d 76 (E.D.N.Y.1999).

On August 9, 1997, Louima was arrested following a verbal altercation with Volpe during which another individual struck Volpe and knocked him to the ground. *See id.* at 79. While pursuing a man he thought was Louima, Volpe came across and beat Patrick Antoine, who was subsequently placed under arrest and charged falsely, based on Volpe's complaint, with various crimes. *See id.* Louima testified that while he was handcuffed in a patrol car en route to the 70th Precinct, he was beaten by Officers Charles Schwarz and Thomas Wiese as well as by Volpe. *See id.* at 79–80. After Louima was processed at the precinct house, he was taken by either Schwarz or Wiese into the bathroom, where Volpe kicked and punched him, then forced a broken broomstick about six inches into his rectum, causing severe internal injuries. *See id.* Volpe

twice threatened to kill Louima and his family if he reported the assault. *See id.*

On August 13, 1997, Volpe was arrested, and in February 1998, a federal grand jury returned an indictment charging Volpe and other officers with various crimes arising out of the assaults on Louima and Antoine. *See id.* at 81. The trial of the officers was held in May and June of 1999. On May 25, 1999, shortly before the scheduled close of the government's case in chief, Volpe pleaded guilty, without a plea agreement, to six of the twelve counts in the indictment. *See id.*

The district court determined the defendant's sentence as follows. *See id.* at 93–94. For the conspiracy to deprive and actual deprivation of Louima's civil rights by aggravated sexual abuse, Judge Nickerson looked to the Guideline for civil rights offenses, *see* U.S.S.G. § 2H1.1(a)(1), which directed him to choose the 27–point base offense level for the underlying offense of criminal sexual abuse, *see id.* § 2A3.1. The district judge found several specific offense characteristics applicable under the circumstances, adding four levels for use of force, *see id.* § 2A3.1(b)(1), two levels because Louima was in police custody at the time of the assault, *see id.* § 2A3.1(b)(3), and three levels because Louima suffered serious injuries in the attack, *see id.* § 2A3.1(b)(4)(C). Judge Nickerson then enhanced the resulting offense level of 36 by six levels because Volpe was a police officer who committed the offense under color of law, *see id.* § 2H1.1(b)(1)(B), and by two levels because Louima was physically restrained during the commission of the offense, *see id.* § 3A1.3. The district judge declined to grant a downward adjustment for acceptance of responsibility. *See Volpe,* 78 F.Supp.2d at 84–85. While he granted a downward departure of two levels for unusual susceptibility to abuse in prison, the district judge explicitly refused to depart on any other grounds. *See id.* at 87–93. Based on the resulting adjusted total offense level of 42, Judge Nickerson sentenced Volpe to 360 months, or 30 years, in prison. *See id.* at 94. Under the Guidelines' grouping rules, Volpe's adjusted offense level was determined exclusively by the Guideline applicable to sexual assault given the significantly lower offense levels of Volpe's other crimes. This appeal from the sentence followed.

## DISCUSSION

### I. *Acceptance of Responsibility*

Notwithstanding Volpe's guilty plea, the district court refused to grant Volpe an adjustment for acceptance of responsibility. We will not overturn a district court's decision to award or deny the adjustment unless its decision was "without foundation." *United States v. Harris,* 13 F.3d 555, 557 (2d Cir.1994) (internal quotation marks omitted). There was more than adequate foundation for Judge Nickerson's refusal to grant the downward acceptance of responsibility adjustment here.

A defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to a two-point reduction in his offense level. U.S.S.G. § 3E1.1. One of the factors to be evaluated in determining whether the adjustment is warranted is "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *Id.* Application Note 1(h). Thus, a defendant who "puts the government to its burden of proof at trial" is entitled to the adjustment only "[i]n rare situations." *Id.* Application Note 2. The Guidelines also direct the district court to consider whether the defendant has truthfully admitted the offense conduct. *See id.* Application Note 1. "[O]ne who is without remorse and fails to acknowledge that his behavior was wrong clearly is not entitled to a reduction for acceptance of responsibility." *United States v. Cousineau,* 929 F.2d 64, 69 (2d Cir.1991).

In this case, although Volpe ultimately admitted his guilt, his plea came late in the trial, thus forcing the government to pres-

ent most of its extensive case against him. In addition, the district judge found that Volpe's statements before and after his plea evinced a lack of remorse and a failure to acknowledge fully the wrongfulness of his conduct. *See Volpe,* 78 F.Supp.2d at 84–85. Both before and during the trial, Volpe advanced the theory that Louima had sustained his injuries during a consensual sexual encounter with another man. Moreover, in the district judge's view, Volpe's statements to the Probation Office about his conduct were "evasive and even inaccurate in some respects and show[ed] an overall reluctance to face up to the extent of his crime." *Id.* at 84. These findings were not clearly erroneous and provide a solid basis for denying the adjustment.

## II.   *Double Counting*

■ The Guideline for criminal sexual abuse prescribes an adjustment "[i]f the victim was ... in the custody, care, or supervisory control of the defendant," U.S.S.G. § 2A3.1(b)(3)(A), while the Guideline for civil rights violations prescribes an adjustment if "the offense was committed under color of law," *id.* § 2H1.1(b)(1)(B). Judge Nickerson chose to impose both adjustments in this case. According to the defendant, this amounted to impermissible double counting. We disagree.

■ "Impermissible double counting occurs when one part of the guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the guidelines." *United States v. Napoli,* 179 F.3d 1, 12 n. 9 (2d Cir.1999) (internal quotation marks omitted), *cert. denied,* — U.S. —, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000). On the other hand, multiple adjustments may properly be imposed when they aim at different harms emanating from the same conduct. The two adjustments at issue here do not serve identical purposes, but rather address separate sentencing considerations. The color-of-law adjustment punishes abuse of au-

thority, either actual or apparent, by an officer of the state. The in-custody adjustment, by contrast, punishes abuse of power over an individual in the officer's physical and legal control.

Accordingly, no impermissible double counting occurs when a police officer, acting under color of law, is punished more severely for sexual abuse that occurred while the victim was also in his custody. The additional punishment recognizes the particular harm inflicted when an individual entrusted to the care and supervision of an officer of the state is unlawfully abused by his supposed caretaker. If nothing else, abuse under these circumstances is more likely to be coercive because of the victim's legal inability to leave and the likely presence of other officers. *Cf. United States v. Hershkowitz,* 968 F.2d 1503, 1505 (2d Cir.1992) ("Section 2H1.4 [now found in substance at § 2H1.1(b)(1)(B) ] plainly does not incorporate a victim's increased vulnerability to defendant's illegal conduct—due to factors such as his status as a detainee and the presence of a defendant's fellow officers—in setting the offense level.").

Contrary to the defendant's argument, there is no necessary overlap between the conduct underlying the two adjustments. Volpe rightly concedes that not all assaults by police officers acting under color of law occur while the victims are in custody. "[T]hat a defendant is acting under color of law does not necessarily contemplate a victim who is in custody and under defendant's control." *See id.* (affirming the imposition of both a color-of-law adjustment and a vulnerable victim adjustment under U.S.S.G. § 3A1.1(b)(1)); *see also Volpe,* 78 F.Supp.2d at 86 ("Police officers who assault civilians under color of law do not ... need to be in police cars or precinct houses to do so."). Nevertheless, Volpe argues that double counting arises because once a person is in police custody, as in this case, any assault against him will necessarily be undertaken by a person acting under color of law. But his proposition is untrue. An

individual in custody could plausibly be assaulted by someone else in custody rather than an officer of the state. Moreover, even if every assault on an individual in custody were committed by an officer of the state, which we doubt, the Guidelines would still permit the imposition of both the in-custody and color-of-law adjustments in order to recognize the separate harms caused by each of these aggravating factors.

Thus, Judge Nickerson did not engage in impermissible double counting by enhancing Volpe's sentence both because Louima was in police custody and because Volpe was a police officer acting under color of law.

### III. *Use of Force*

Volpe argues that the district court erred in enhancing his sentencing range for use of force. We disagree.

U.S.S.G. § 2A3.1(b)(1) requires a four-level increase in offense level if the sexual abuse "was committed by the means set forth in 18 U.S.C. § 2241(a) or (b)." Section 2241(a) punishes those who knowingly cause someone else to engage in a sexual act:

(1) by using force against that other person; or

(2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping.

18 U.S.C. § 2241(a). Section 2241(b) punishes those who engage in a sexual act with someone else by knowingly:

(1) render[ing that] person unconscious . . .; or

(2) administ[ering] to [that] person . . . a drug, intoxicant, or other similar substance [that] substantially impairs the ability of that other person to appraise or control conduct.

*Id.* § 2241(b). As the text of these statutory provisions makes clear, they penalize conduct intended to overcome another person's lack of consent to a sexual act,

whether achieved through physical force, threats of force, or other means that render the other person unconscious or otherwise unable to fend off the assault. *See United States v. Weekley,* 130 F.3d 747, 754 (6th Cir.1997) ("A force sufficient to sustain a conviction under 18 U.S.C. § 2241(a) includes 'the use of such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim.' ") (quoting *United States v. Fire Thunder,* 908 F.2d 272, 274 (8th Cir.1990)). Therefore, § 2A3.1(b)(1) "punishes the actual use of force [or other means listed in § 2241(a) and (b)] used to overbear the will of another in perpetrating aggravated sexual abuse." *United States v. Reyes Pena,* 216 F.3d 1204, 1210 (10th Cir.2000).

Judge Nickerson imposed the use-of-force adjustment on two separate grounds. First, the district judge found that Volpe had committed sexual abuse through the use of force "[b]y 'pushing, kicking and punching' Louima in the bathroom immediately before the sexual assault." *See Volpe,* 78 F.Supp.2d at 86–87. Second, the district judge held that Volpe's "sodomizing Louima with enough force to puncture his rectum and bladder . . . was certainly forceful enough to trigger" the adjustment. *Id.* at 87.

We have some difficulty with the second justification. Under this view, the adjustment punishes Volpe for inserting the stick particularly forcefully and deeply, since the sexual assault itself did not require such a forcible use of the stick. As discussed above, however, § 2A3.1(b)(1) appears to be aimed at uses of force to compel the victim's submission to a sexual assault, not at more forceful assaults, especially since the degree of injury to the victim is taken into account separately in § 2A3.1(b)(4).

Nevertheless, we believe the use-of-force adjustment was properly imposed in this case on the first ground cited by Judge

Nickerson. Volpe admitted to "pushing, kicking and punching" Louima in the bathroom just before the assault, and this abuse surely reduced Louima's physical and emotional capacity to resist the subsequent assault. Moreover, Volpe's accomplice in the bathroom physically restrained Louima during the assault itself. These actions alone justify imposition of the adjustment because they effectively compelled Louima to submit to the assault. *Cf. United States v. Lauck*, 905 F.2d 15, 18 (2d Cir.1990) (holding that § 2241(a)(1) applied where the "sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact").

■ The defendant also argues that the district court engaged in impermissible double counting by enhancing his sentence both for his use of force and for Louima's resulting injuries. But these two adjustments address different harms. The use-of-force adjustment punishes forcible compulsion of sexual acts, while the degree-of-injury adjustment punishes the assailant for the injuries to the victim that result from the assault. These different purposes are served even if some of the victim's injuries derive from the force and restraint used to compel his submission, rather than from the sexual act itself. Volpe's objection might be stronger if we relied on the forcefulness of his insertion of the stick in imposing the adjustment, since we would arguably be equating the force element with the injuries that resulted from the use of force. But this objection does not in any way undermine Judge Nickerson's first basis for imposing the use-of-force adjustment, on which we rely exclusively here.

### IV. *Failure to Downwardly Depart*

Finally, the defendant argues that the district court erred in failing to depart downward for Volpe's efforts to exonerate an innocent man and for a combination of factors. We conclude that Judge Nickerson did not fail to recognize his authority

to depart, but rather determined that a downward departure was not warranted on either of these grounds under the circumstances of this case. We therefore dismiss this portion of Volpe's appeal.

■ "Although a sentencing court's discretionary refusal to depart downward is generally not appealable, an exception exists when the court mistakenly concluded as a matter of law that it lacked the legal authority to depart." *United States v. Diaz*, 176 F.3d 52, 121 (2d Cir.), *cert. denied sub nom. Rivera v. United States*, —— U.S. ——, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999). According to Volpe, the district court failed to recognize its authority to depart downward to take account of: (1) Volpe's statement to the government that his accomplice in the bathroom was Wiese, not Schwarz (as the government was arguing at trial); and (2) the unique combination of factors in this case that made the sentence prescribed by the Guidelines unduly harsh. We disagree.

■ First, Judge Nickerson plainly and properly recognized that " 'activities facilitating the proper administration of justice' " may form the basis for a downward departure. *Volpe*, 78 F.Supp.2d at 89 (quoting *United States v. Garcia*, 926 F.2d 125, 127 (2d Cir.1991)). However, the district judge concluded that Volpe's attempt to exonerate a supposedly innocent man and inculpate another was insufficient to justify a departure in this case because "the trial proceeded to a verdict entirely without Volpe's 'assistance' " and he "did not break any 'log-jam' in the case against his co-defendants or otherwise 'facilitate the administration of justice.' " *Id.* at 90 (quoting *Garcia*, 926 F.2d at 127). Moreover, we see no particular reason to believe Volpe was being truthful in naming Wiese as his co-assailant in the bathroom. His assertion was never tested by cross-examination, the man he was supposedly trying to exonerate, Schwarz, did not call him as a witness, and the jury ultimately

decided to convict only Schwarz, not Wiese.

 Second, Judge Nickerson refused to grant a downward departure for the "unique combination of facts and circumstances in this case" not because he perceived no authority to do so, but rather because he concluded that "Volpe's crimes were unusually heinous" and thus the harsh punishment prescribed by its Guidelines calculations did not " 'overstate the ' harm' Volpe inflicted upon Louima and upon society at large." *Id.* at 90. Indeed, the district judge suggested that, if anything, the unique combination of factors in this case justified an upward departure, not a downward one. *See id.* In any event, the experienced district judge plainly understood his discretion to depart on these grounds and exercised it by not doing so. We may not review that decision. *See United States v. Brown,* 98 F.3d 690, 692 (2d Cir.1996) (*per curiam* ).

## CONCLUSION

For the foregoing reasons, we conclude that Judge Nickerson did not err in sentencing the defendant. First, the district judge acted well within his discretion in refusing to provide a downward adjustment for acceptance of responsibility. Second, he did not engage in impermissible double counting by imposing enhancements both because the victim was in police custody and because the defendant was a police officer. Third, he appropriately enhanced the defendant's sentencing range for use of force. Finally, he recognized his authority to depart downward on the grounds proffered by the defendant but simply declined to do so under the circumstances of this case. Accordingly, we dismiss Volpe's appeal in part and affirm the district court's judgment of conviction and sentence in all other respects.