NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0043n.06

Case No. 18-1517

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 28, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| STEVEN K. GILMORE, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MERRITT, GUY, and MOORE, Circuit Judges.

**MERRITT, Circuit Judge.** The single issue presented in this appeal is whether the finding that an assault causing "serious bodily injury" can be used to invoke the base offense level and to enhance that level under the sentencing guidelines. Defendant argues that the district court impermissibly double counted when it relied on the victim's serious bodily injury to trigger application of the aggravated assault guideline and then imposed an additional five-level enhancement for the same conduct. The government acknowledges the double counting for the same conduct, but contends that the Sentencing Commission clearly intended that result when serious bodily injury is inflicted. For the following reasons, we affirm.

**I.**

In May 2017, defendant Steven Gilmore was being held at the Federal Detention Center in Milan, Michigan while he awaited assignment to a facility with the Bureau of Prisons. He had been sentenced to 66 months in prison for possessing pipe bombs and a firearm. Gilmore attacked a fellow inmate in the common area of the detention center. The victim suffered multiple facial fractures, including the orbital bone around his right eye, and multiple lacerations on his face and in his mouth requiring stiches. Gilmore pled guilty to one count of violating 18 U.S.C. § 113(a)(6), Assault resulting in serious bodily injury, a conviction carrying a statutory maximum of 10 years. Section 113(a)(6) provides:

> (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
>
> . . .
>
> (6) Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more than ten years, or both.
>
> . . .

Title 18 makes a distinction between "substantial bodily injury" and "serious bodily injury" based on the degree of injury, whether the injury will result in any permanent disfigurement or damage, the amount of pain suffered by the victim, and the recovery time. The definition section in 18 U.S.C. § 113 provides in relevant part:

> (b) Definitions.--In this section--
>
> > (1) the term "substantial bodily injury" means bodily injury which involves--
> > > (A) a temporary but substantial disfigurement; or
> > > (B) a temporary but substantial loss or impairment of the function of any bodily member, organ, or mental faculty;
> >
> > (2) the term "serious bodily injury" has the meaning given that term in section 1365 of this title . . . .

18 U.S.C. § 1365(h)(3) defines "serious bodily injury" as bodily injury that involves:

(A) a substantial risk of death;
(B) extreme physical pain;
(C) protracted and obvious disfigurement; or
(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty

Defendant's guideline range for the prison assault was 33-41 months, and he received a below-guidelines sentence of 31 months. His plea agreement provides that any sentence is to be served consecutive to the 66-month sentence defendant is currently serving.

## II.

### A.  Standard of Review

A district court's interpretation of the sentencing guidelines is a legal question that we review de novo. *United States v. Duke*, 870 F.3d 397, 401 (6th Cir. 2017). "But with respect to a district court's application of the Guidelines, 'we review the district court's factual findings for clear error and mixed questions of law and fact de novo.'" *Id.* (emphasis omitted) (quoting *United States v. Tolbert*, 668 F.3d 798, 800 (6th Cir. 2012)).

### B.  Double Counting

The Sentencing Commission specifically directs that it intends for all aggravated assault convictions under 18 U.S.C. § 113(a)(6), the statute to which Gilmore pled guilty, to be scored solely under § 2A2.2, labeled "Aggravated Assault."[1]  *See* U.S.S.G. Appendix A. The sentencing

---

[1] § 2A2.2. Aggravated Assault

(a) Base Offense Level: 14

(b) Specific Offense Characteristics

(1) If the assault involved more than minimal planning, increase by 2 levels.

(2) If (A) a firearm was discharged, increase by 5 levels; (B) a dangerous weapon (including a firearm) was otherwise used, increase by 4 levels; (C) a dangerous weapon (including a firearm) was brandished or its use was threatened, increase by 3 levels.

(3) If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
|---|---|
| (A)  Bodily Injury | add 3 |

guidelines specify that "'Aggravated assault' means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) *serious bodily injury*; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1 (emphasis added). Gilmore received a base offense level of 14 under § 2A2.2. The base offense level was increased by five levels under § 2A2.2(b)(3)(B) because the assault caused "serious bodily injury." Gilmore's objection, which is not without logic, is that the finding of "serious bodily injury" triggers both the base offense level and the five-level enhancement, resulting in double counting.

It is well established that "impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999); *see also Duke*, 870 F.3d at 404. Nevertheless, "a court may impose [multiple] enhancements arising from the same conduct, provided the enhancements 'penalize distinct aspects of [a defendant's] conduct and *distinct harms*.'" *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015) (quoting *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008)) (emphasis added); *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 2000) ("Impermissible double counting occurs when one part of the guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of

---

(B) Serious Bodily Injury add 5
(C) Permanent or Life-Threatening Bodily Injury add 7
(D) If the degree of injury is between that specified in subdivisions (A) and (B), add 4 levels; or
(E) If the degree of injury is between that specified in subdivisions (B) and (C), add 6 levels.
However, the cumulative adjustments from application of subdivisions (2) and (3) shall not exceed 10 levels.

(4) If the offense involved strangling, suffocating, or attempting to strangle or suffocate a spouse, intimate partner, or dating partner, increase by 3 levels.
However, the cumulative adjustments from application of subdivisions (2), (3), and (4) shall not exceed 12 levels.

(5) If the assault was motivated by a payment or offer of money or other thing of value, increase by 2 levels.

(6) If the offense involved the violation of a court protection order, increase by 2 levels.

(7) If the defendant was convicted under 18 U.S.C. § 111(b) or § 115, increase by 2 levels.

the guidelines. . . . On the other hand, multiple adjustments may properly be imposed when they aim at different harms emanating from the same conduct.") (internal citation and quotation marks omitted).

Moreover, the law permits double counting "where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *United States v. Battaglia,* 624 F.3d 348, 351 (6th Cir. 2010) (quoting *Farrow*, 198 F.3d at 194); *see also Farrow*, 198 F.3d at 195 (noting this court would have "nevertheless . . . imposed[d] these additional penalties if persuaded that this is what Congress or the Sentencing Commission intended."). This is the case here. Appendix A of the guidelines instructs sentencing courts to sentence individuals who have been convicted of violating 18 U.S.C. § 113(a)(6)—assault causing "serious bodily injury"—to be sentenced under § 2A2.2 exclusively. Along with the applicable base offense level, § 2A2.2 necessarily includes incremental enhancements based on whether the aggravated assault caused "serious bodily injury." U.S.S.G. § 2A2.2(b)(3). Thus, by requiring defendants who have been convicted under 18 U.S.C. § 113(a)(6) to be sentenced only pursuant to § 2A2.2, the Sentencing Commission appears to have anticipated and intended for individuals in Gilmore's particular position to be subject to the entire guideline, including the applicable enhancements under § 2A2.2(b)(3). *Cf. Farrow*, 198 F.3d at 194-95 (concluding that the Sentencing Commission had not "contemplated" the defendant's factual situation and that the defendant had been subjected to impermissible double counting under § 2A2.2 cmt. n.1 ("involved" a "dangerous weapon") and §2A2.2(b)(2)(B) (a "dangerous weapon" was "used") when his action "involved" a dangerous weapon due only to the *use* of an otherwise non-dangerous weapon—a car—during the assault). As this court has noted, "the Sentencing Guidelines should be interpreted as if they were a statute"

and we should follow the guidelines' "clear [and] unambiguous language if there is no manifestation of a contrary intent." *Farrow*, 198 F.3d at 194 (internal quotation marks omitted).

The internal structure of § 2A2.2 further demonstrates that the Sentencing Commission intended that the seriousness of the resulting harm from the aggravated assault should play a role in calculating the net offense level. The guideline uses incremental increases to enhance the punishment depending on the seriousness of the resulting injury, and § 2A2.2 explicitly allows for the special offense characteristics to be applied cumulatively if applicable, subject only to a cumulative maximum of 12 levels for §§ 2A2.2(b)(2), (3), and (4). *See Farrow*, 198 F.3d at 194 (recognizing "that the Sentencing Commission Guidelines expressly mandate double counting under some circumstances through the cumulative application of sentencing adjustments").

The Commission's intent to enhance the base offense level based on the seriousness of the injury is also evidenced by the Commission's proposed amendment to § 2A2.2 in 2001 to increase the base offense level from 14 to 19 for aggravated assault convictions under 18 U.S.C. § 113(a)(6). The Commission's reasoning for the increase in the base offense level was that "[t]he base offense level of level 19 for the offenses under 18 U.S.C. § 113(a)(6) . . . achieves the same offense level as should be achieved under the current guideline by application of the base offense level and the serious bodily injury enhancement in subsection [2A2.2](b)(3)(B)." Proposed Amendments (Jan. 24, 2001). The Commission noted that courts had not been adding the enhancement because "either there may be confusion about what conduct the base offense level incorporates for these types of aggravated assaults or application of the serious bodily injury enhancement is being avoided in cases in which it is warranted. Incorporating the serious bodily injury enhancement into the base offense level may help to ameliorate these concerns." *Id.* Although the amendment was not ultimately adopted, the Commission expressed its intent that assaults inflicting "serious

bodily injury" should receive an offense level of 19 and that courts should otherwise apply both the base offense level and the enhancement for aggravated assault resulting in "serious bodily injury," even absent language expressly requiring them to do so.

The district court noted at Gilmore's sentencing hearing that although there were previous Sixth Circuit cases finding double counting permissible under § 2A2.2, those cases either did not involve the five-level enhancement for "serious bodily injury" or did not speak to the issue regarding the base offense level. Apr. 30, 2018, Hearing Tr. at 10; *see, e.g., Duke*, 870 F.3d at 405 (discussing the imposition of enhancements under § 2A2.2(b)(3)(A) and § 2A2.2(b)(7)); *Farrow*, 198 F.3d at 188 (examining the defendant's base offense level and enhancement under § 2A2.2(b)(2)(B)). Relying on the specific way in which § 2A2.2 is structured, as well as the Sixth Circuit cases allowing double counting under other subsections of § 2A2.2, the district court found that the Sentencing Commission intended that the degree of bodily injury sustained should be considered in applying any enhancements regardless of the fact or finding that was used to trigger the base offense level. *Id.* We agree that the Sentencing Commission intended double counting here for convictions under 18 U.S.C. § 113(a)(6).

For the reasons set forth above, Gilmore has not demonstrated that the district court impermissibly double counted by applying the five-level enhancement pursuant § 2A2.2(b)(3)(B). We therefore affirm the judgment of the district court.